## FRANK DINUZZO V. STATE OF NEBRASKA.

FILED NOVEMBER 9, 1909.   No. 16,330.

1. **Statutes:** AMENDMENT: CONSTITUTIONAL LAW.   Chapter 82, laws 1909, an act declaring by its title a purpose to amend section 14, ch. 50, Comp. St. 1907, and making it unlawful to sell or give away intoxicating liquors after 8 o'clock P. M. and before 7 o'clock A. M., is germane to the amended statute, which prohibited the sale of intoxicating liquors on days of election and on Sundays, and the amendment did not violate the constitutional provision that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title." Const., art. III, sec. 11.

2. ——: ——: ——.   In enacting chapter 82, laws 1909, an act amending section 14, ch. 50, Comp. St. 1907, by inserting therein a provision making it unlawful to sell or give away intoxicating liquors after 8 o'clock P. M. and before 7 o'clock A. M., the legislature did not amend other laws delegating to municipalities the power to regulate the traffic in intoxicating liquors within the meaning of the constitutional provision that "no law shall be amended unless the new act contain the section or sections so amended and the section or sections so amended shall be repealed." Const., art. III, sec. 11.

3. **Criminal Law:** PENALTIES.   Section 14, ch. 50, Comp. St. 1909, making it unlawful for a licensed saloon-keeper to sell or give away intoxicating liquors after 8 o'clock P. M. and before 7 o'clock A. M., is not invalidated by reason of a provision therein which authorizes a fine of $100 and a forfeiture of the license upon conviction of the licensee for violating the law.

ERROR to the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE.   *Affirmed.*

*Weaver & Giller,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

*L. D. Holmes, amicus curiæ.*

ROSE, J.

The question for determination in this case is the validity of the daylight saloon act.   In a prosecution by the

state in the district court for Douglas county, defendant Frank Dinuzzo, a licensed saloon-keeper in the city of Omaha, was convicted of selling and giving away malt and spirituous liquors after 8 o'clock P. M., July 10, 1909, in violation of the act mentioned. For that offense he was sentenced to pay a fine of $100, and he now presents the record of his conviction for review by a petition in error.

Defendant assails the sentence of the trial court on the sole ground that the daylight saloon law under which he was convicted is unconstitutional and void. Before that act was passed the general statutes regulating the sale of intoxicating liquors, namely, chapter 50, Comp. St. 1907, contained the following: "Section 14. Every person who shall sell or give away any malt, spirituous, and vinous liquors on the day of any general or special election, or at any time during the first day of the week, commonly called Sunday, shall forfeit and pay for every such offense, the sum of one hundred dollars." This section was amended at the last session of the legislature. The amendment contains the daylight saloon act, and reads as follows: "Every person who shall sell or give away any malt, spirituous or vinous liquors or any intoxicating drinks on the day of any general, special or primary election, or at any time during the first day of the week, commonly called Sunday, or at any time upon any week day, after the hour of eight o'clock P. M. and before the hour of seven o'clock A. M. of the following day shall forfeit and pay for every such offense, the sum of one hundred dollars, and his license shall be forfeited and canceled by the board granting the same, forthwith, whether such person convicted shall appeal therefrom or not." Laws 1909, ch. 82; Comp. St. 1909, ch. 50, sec. 14.

Defendant admitted by demurrer the truth of the charge that he sold and gave away malt and spirituous liquors in violation of the amendment quoted, but insists the amendatory act is void, and for that reason prays for a reversal of the judgment imposing the fine. The validity of the act is challenged on the ground it contravenes the

constitutional provision that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title." Const., art. III, sec. 11. The title of the amendatory act is as follows: "An act to amend section 14, chapter 50, Compiled Statutes of the state of Nebraska for the year 1907, and to repeal said original section." Laws 1909, ch. 82. Defendant insists this title confines the new legislation to the subject of the original section, which, according to his conception thereof, is limited to sales of intoxicating liquors on days of election and on Sundays, and that the amendment prohibiting sales after 8 o'clock P. M. on other days is a different subject within the meaning of the constitution. The fallacy of this argument is in the assumption that the subject of the original section is limited to sales on days of election and on Sundays. Section 14 in its original form was part of the general statute regulating "the license and sale of malt, spirituous and vinous liquors." That law was passed in 1881, and with few changes has since been in force. The subject of section 14 must be determined by its relation to the entire statute as well as by the import of its own provisions. Chapter 50, Comp. St. 1907, contains no limitation on the time of giving away intoxicating liquors or of making sales thereof, except that found in section 14, which, as originally enacted, prohibited gifts and sales on days of election and on Sundays. The only purpose of section 14 was to impose that limitation and make it effective. To that extent it qualified and limited other provisions. It contained no legislation on any other subject, and no other restriction of a similar nature can be found anywhere in the statute in which it was inserted. Other sections authorized licenses and sales, but restrictions as to time of sales are found alone in section 14. By confining the limitation therein to days of election and Sundays the lawmakers did not exhaust their power to legislate on the time of closing saloons. The daylight saloon act restricts still further the time of trafficking in

intoxicating liquors and that subject is certainly germane
to the original section. Being the only provision limiting
the time of making sales, it was natural for the lawmakers
to amend it when extending the restrictions. It was evi-
dently selected for amendment because it was the section
which placed limitations on the time of operating saloons.
Considered in this light the amendment is not surrepti-
tious legislation. Its passage in its present form and its
effect on other laws are not evils which the constitutional
provision was intended to avert. Defendant's interpreta-
tion of the subject of the original section cannot be
adopted. Such a doctrine would interfere with legislative
amendments to an extent never contemplated by the fram-
ers of the constitution or by the people who adopted it.

The daylight saloon law is also attacked on the ground
it violates the constitutional provision that "no law shall
be amended unless the new act contains the section or sec-
tions so amended, and the section or sections so amended
shall be repealed." Const., art. III, sec. 11. In pointing
out statutes thus amended defendant refers to the follow-
ing enactment: "The corporate authorities of all cities
and villages shall have power to license, regulate and pro-
hibit the selling or giving away of any intoxicating, malt,
spirituous and vinous, mixed or fermented liquors within
the limits of such city or village." Comp. St. 1907, ch. 50,
sec. 25. Reference is also made to a number of city char-
ters which confer upon cities power to regulate the traffic
in intoxicating liquors without restriction as to the time
of making sales. Other provisions are also included in
defendant's list of statutes amended by, but not contained
in, the daylight saloon law or repealed by it. He argues
that the act, though purporting on its face to amend no
legislative enactment except section 14, ch. 50, Comp. St.
1907, in fact amends also section 25 of the same chapter,
and other statutory provisions, and consequently passes
the bounds of the constitutional limitation quoted. In
discussing the effect of the amendment on the power dele-
gated to cities and county boards, he said in his argument:

"By this act the power conferred has been partially taken away from the various corporate authorities. It is necessary now to read into section 25 of chapter 50 the amendment known as the daylight saloon bill. It is now necessary to say, so far as section 25 is concerned, that the corporate authorities of all cities and villages shall have power to regulate and prohibit only between the hours of 7 in the morning and 8 in the evening, because by the act in question there is an absolute prohibition of all sales between 8 P. M. and 7 A. M. of every week day. It is also necessary to read into the charter of every city and village in the state that the power to regulate and prohibit is limited to the hours between 7 A. M. and 8 P. M. of every week day. It is also necessary to read this amendment into the power granted county commissioners with reference to the regulation and prohibition of the sale of liquors within their respective jurisdictions."

It is the duty of the court to consider as a whole and harmonize, if possible, all valid legislation on the subject of intoxicating liquors. A construction making all provisions valid should be adopted, if it can be done without violating a limitation fixed by the constitution. For the same reason, a construction which would make an act unconstitutional should be avoided, unless there is a plain violation of the supreme law. When these canons are followed, it is not necessary to hold the daylight saloon act invalid on the ground that it amends other laws without referring to them. The police power to restrict by law the time when intoxicating liquors may be sold is within legislative control. By section 14 of the original act the legislature exercised such power to the extent of prohibiting sales of intoxicating liquors on the days of election and on Sundays, and still retains it unless it has since been delegated to the municipalities by exclusive grants, which can only be found in explicit declarations construed in connection with other legislation on the same subject. Police power is usually retained by the legislature to be exercised for the general welfare, and a contrary purpose

should not be inferred from doubtful language. *Territory v. Webster*, 5 Dak. 351. A text-writer says: "In some of the states the legislative policy has been to confide the regulation or prohibition of the sale of liquor exclusively to the authorities of the municipal corporations. The grant of such power, while undoubtedly valid, is not to be presumed. Nothing short of an explicit declaration of the legislative will in that behalf will suffice to endow the municipalities with entire control over the subject, to the exclusion of all other authorities." Black, Intoxicating Liquors, sec. 226.

The provisions by which the legislature delegated to cities power to regulate or prohibit the liquor traffic do not warrant the conclusion that the grants were exclusive to the extent of preventing the enactment or amendment of a general law limiting the business hours of licensees. The nearest approach is found in the Lincoln charter, which declares: "The excise board shall have the exclusive control of the licensing and regulating the sale of malt, spirituous, vinous, and intoxicating liquors in such city." Comp. St. 1907, ch. 13, art. I, sec. 64. In Lincoln control in such matters had been transferred from the mayor and council to the excise board, and the words "exclusive control" were intended to emphasize the complete jurisdiction of the excise board to the exclusion of the mayor and council. The nature of the delegation of power conferred upon the city of Lincoln by its charter has already been considered by this court. In an able opinion by Judge Norval it was said: "While the excise board has the exclusive authority to license the sale of liquors in the city, it is required to exercise its power subject to the limitations and restrictions imposed by general law. * * * We agree with the trial court that the word 'exclusive' was used by the legislature to bar all claim of authority over the subject of granting license by the body from which control had been taken, and that the exclusive control given the excise board over the matter is subject to the restrictions contained in the general law."

*Sanders v. State,* 34 Neb. 872.   The power to license, regulate or prohibit the traffic in intoxicating liquors, as delegated to cities by section 25, ch. 50, Comp. St. 1907, and by other enactments, is subject to the limitations and restrictions imposed by general law.   That this' was the intention of the legislature appears on the face of the general statute.   The municipal power conferred by section 25 is limited by the following proviso in the same section:   "In granting license or permits such corporate authorities in cities and villages and the board of fire and police commissioners in such other cities shall comply with and be governed by all the provisions of this act in regard to granting of license and all the provisions and penalties contained in this act shall be applicable to such licenses and permits and the persons to whom they are granted."   Comp. St. 1907, ch. 50, sec. 25.   Section 64 of the Lincoln charter contains the following limitations on the power of the city authorities:   "All the restrictions, regulations, forfeitures, and penalties provided by law respecting the sale of liquors by persons licensed therefor by the county board shall apply to and govern all persons licensed by virtue of this section."   Comp. St. 1907, ch. 13, art. I, sec. 64.   The charter of cities of the second class and villages contains the following provision on the same subject:   "Such corporate authorities shall comply with whatever general law of the state may be in force relative to the granting of licenses."   Comp. St. 1907, ch. 14, art. I, sec. 69, subd. 9.   All other city charters, with the possible exception of that of the city of Omaha, contain provisions of like import.   City authorities and licensees, therefore, are not only restricted by general law, but are bound by valid amendments thereof.   The opinion is unanimous that the daylight saloon act does not amend. any other statute within the meaning of the constitutional limitation invoked by defendant.

It is finally contended that the provision authorizing a fine of $100 and a forfeiture of the license upon conviction of a licensee for violating the law, "whether such person

convicted shall appeal therefrom or not," invalidates the amendment. The objection to the legislation is that it inflicts cruel and unusual punishment, deprives defendant of his license without a jury trial, and denies the right of appeal. This position is clearly untenable. The penalties are both usual and lawful, and the right of appeal is not denied. In an opinion by Chief Justice REESE these conclusions were announced: "There is no *vested* right in a license to sell intoxicating liquors, which the state may not take away at pleasure.

"Such licenses are not contracts between the state or municipality issuing them and the licensee, but are mere temporary permits to do what otherwise would be unlawful.

"They are subject to the direction of the government, which may revoke them as it deems fit, and may be abrogated by the adoption of a municipal ordinance prohibiting the sale of liquors." *Martin v. State,* 23 Neb. 371.

No sufficient reason for holding the daylight saloon act invalid has been suggested, and the judgment of the district court upholding it is

AFFIRMED.