P. F. PETERSEN BAKING COMPANY ET AL., APPELLANTS,
v. CHARLES W. BRYAN, GOVERNOR, ET AL., APPELLEES.

FILED MARCH 2, 1933. No. 28356.

*John C. Grover* and *Harold D. Le Mar,* for appellants.

*C. A. Sorensen, Attorney General,* and *George W. Ayres, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

Goss, C. J.

Plaintiffs sued for an injunction to prevent the enforcement of "An act to establish a standard loaf of bread" and making a violation a misdemeanor. Laws 1931, ch. 162, Comp. St. Supp. 1931, secs. 89-169 to 89-172. From a decree rendering a judgment for defendants, plaintiffs appeal. Under the Code of Civil Procedure the appeal is for trial *de novo*. Comp. St. 1929, sec. 20-1925.

Section 1 of the act charged the department of agriculture with the duty of enforcement and authorized it to promulgate necessary rules and regulations. Sections 2 and 3 follow:

"Sec. 2. Every loaf of bread made for sale in the state of Nebraska shall be of the following weights avoirdupois: One-half pound, one pound, one and one-half pounds, and also in exact multiples of one pound and of no other weights. Whenever twin or multiple loaves are baked, the weights herein specified shall apply to each unit of the twin or multiple loaf, provided that a twin one and one-half pound loaf may be made and sold, but units of said loaf must not be sold separately: Provided that none of the provisions of this act shall apply to fancy breads.

"Sec. 3. The secretary of agriculture shall prescribe reasonable tolerances or variations in excess, but not under the weights mentioned in the preceding section, within which all loaves shall be baked, and also the time for which said weights shall be maintained."

The secretary of the department of agriculture duly promulgated rules and regulations. He prescribed that tolerances should not exceed one and one-half ounces for half-pound loaves, three ounces for pound loaves, four and one-half ounces for one and one-half pound loaves, six ounces for two pound loaves and the same relative tolerance for loaves of larger size. The rules provided that bread for sale in Nebraska should maintain its required minimum weight for not less than twelve hours under

normal conditions, but that the baker should not be held responsible for the maintenance of the minimum weight after delivery to a retail dealer or consumer or to a transportation agency in Nebraska for delivery to a retail dealer or consumer; and provided that weights shall be determined by averaging the weight of not less than five loaves, if available, of a given lot of bread of the same grade, size and baking.

The act in question repealed an existing law passed in 1921 and amended in 1927. The 1921 law was the subject of litigation in 1922. It was sustained in the district court and the judgment of this court affirmed the validity of the act. *Burns Baking Co. v. McKelvie*, 108 Neb. 674. On error proceedings the United States supreme court, two members dissenting, reversed the judgment of this court on the ground that the tolerance was unreasonable and arbitrary and therefore repugnant to the Fourteenth Amendment. *Burns Baking Co. v. Bryan*, 264 U. S. 504. That court found from the evidence that it was "impossible to manufacture good bread in the regular way without frequently exceeding the prescribed tolerance and incurring the burden of penalties prescribed by the statute." The act of 1921 (Laws 1921, ch. 2), there considered, provided for a tolerance at the rate of two ounces per pound, to be maintained at least twenty-four hours after baking, averaged by weighing not less than twenty-five loaves of any one unit. The act of 1931, attacked here, by its authorized regulations, increased the tolerance to three ounces per pound, to be maintained not less than twelve hours under normal conditions, averaged by weighing not less than five loaves. But the regulation relieved the baker from maintaining the weights after delivery.

We deem it unnecessary to review in detail the testimony of the numerous witnesses for both parties as to the practicability of compliance with the tolerance as now fixed. It is sufficient to state our conclusions of fact in respect thereto. Actual tests of regular run of bread

baked by the plaintiffs and purchased from them indicate that the tolerance is ample. The evidence shows that bakers having plants in many states comply with quite similar provisions in laws and ordinances in some of these states and from choice pursue the same methods as to weights in the other states where they do business but where such laws and regulations do not exist. We find that the great preponderance of the evidence shows that plaintiffs, and others similarly situated for whom they sue, may readily comply with the weight and tolerance provisions of the present act.

Plaintiffs argue that the title is not broad enough to prohibit weights of bread of certain types now baked. The evidence applicable to this point refers especially to a twenty-ounce loaf. We are of the opinion that an act to establish a standard loaf of bread and to prohibit violations is broad enough to prohibit other than standard sizes as fixed by the act. While it might inconvenience the bakers to shorten or lengthen the twenty-ounce loaf, so as to make one of legal weight, or to adjust their appliances so as to make prescribed sizes, these are matters generally for consideration by the legislature and not by the court. The making and selling of bread is a business subject to police regulation. Courts can interfere only when regulations arbitrarily exceed a reasonable exercise of authority. Mere inconvenience to those conducting a business subject to police regulation does not vitiate the exercise of the power. *Schmidinger v. City of Chicago*, 226 U. S. 578; *Burns Baking Co. v. McKelvie*, 108 Neb. 674.

It is claimed that the act unlawfully delegates legislative authority in violation of section 1, art. II of the Constitution of Nebraska. Such delegation to an administrative body as took place here is a part of the settled legislative policy of this state. Section 71-2302, Comp. St. 1929, places sanitation and quarantine under the department of public welfare, authorizes it to adopt and publish reasonable rules and regulations and provides a

penalty for violation of such rules and regulations. Section 75-201 gives the state railway commission power to regulate rates and service of railroads and all other intrastate common carriers and, under section 75-218, a violation of any order is a misdemeanor subject to penalty. Other instances might be cited.

The legislature of North Carolina put oil inspection under the commissioner of agriculture of that state. It authorized the board of agriculture to make rules and regulations for inspection and to adopt such standards of safety not in conflict with the act as it might deem necessary to provide the people of the state with satisfactory illuminating oil. Section 8 of the act (Public Laws N. Car. 1909, ch. 554) made a violation a misdemeanor. The supreme court of the United States held that remitting to the proper state board the establishment of rules and regulations to determine what oils measure up to such standards did not amount to a delegation of legislative powers. *Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina,* 222 U. S. 380, and cases cited on page 394. There the North Carolina board of agriculture was granted wider authority than the Nebraska secretary of agriculture was given in the present instance. Neither was granted nor exercised purely legislative powers. In each instance the authority was administrative in its nature. Its use by the administrative department was essential to the complete and wise exercise of the powers of the legislative department of the state government. It resulted in constitutional cooperation between the legislative and executive branches.

Plaintiffs assert that the act is indefinite and uncertain and alleges several specifications. If these have not been met by what we have already said in deciding that the act fixed the standards and the regulations merely forwarded them, we think what was further decided in *Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina, supra,* disposes of them: "Where one complains that regulations promulgated under legislative authority by a state board are unreasonable and oppressive, he

should seek relief by applying to that board to modify them."

In their main brief the plaintiffs say: "No contention is made that the legislature is unable to fix minimum weights so long as minimum weights specified are reasonable, and that the law as passed is designed to prevent deception and fraud upon the public by means of short weights." A secondary purpose is to prevent unfair competition by dishonest bakers resulting in injury to the consuming public. Plaintiffs urge that the act is unreasonable and arbitrary because it prohibits a maximum weight in each size of standard loaf. The very provision against permitting excess of more than three ounces to the pound prevents short weight frauds. Neither the act itself nor the regulation prescribed by the secretary of agriculture requires wrapping, labelling or branding of loaves. Bakers may make as a pound loaf one perfectly legal but weighing 19 ounces and sell it as a substitute for the present twenty-ounce loaf which some of the plaintiffs greatly favor. It may or may not deceive the consumer accustomed to a twenty-ounce loaf. Whether it deceive him or not, no action will lie because the loaf is within the tolerance provided by the act. But, if the baker make a loaf weighing 19½ ounces, a purchasing consumer may be actually and legally defrauded by believing it is one of the former twenty-ounce loaves. Or an undiscriminating purchaser may even be deceived into thinking it a pound and a half loaf. Thus, in a very practical way, it is demonstrated that the state attempts to prevent short weights by prohibiting excess tolerance or variation. That is the plain intent of the law.

We cannot cover in detail other particulars urged by appellants. We do not find them available to secure a reversal of the judgment of the district court. We are of the opinion that the act and regulations complained of are not violative of the state Constitution nor of the Fourteenth Amendment of the Constitution of the United States. The judgment of the district court is

AFFIRMED.