## P. F. PETERSEN BAKING CO. ET AL. *v.* BRYAN, GOVERNOR, ET AL.

No. 203.   Argued December 8, 1933.—Decided January 8, 1934.

*Messrs. Harold D. LeMar* and *John C. Grover* for appellants.

*Mr. Paul F. Good,* with whom *Mr. Daniel Stubbs* was on the brief, for appellees.

Mr. Justice Butler delivered the opinion of the Court.

Appellants are makers of bread for sale in Nebraska. The appellees, the governor and deputy secretary of agriculture, are authorized to enforce an act to establish a standard loaf. Laws 1931, c. 162, p. 430. Appellants sued in the district court of Lancaster county to have the

measure decreed invalid and its enforcement enjoined upon the ground of repugnancy to the due process and equal protection clauses of the Fourteenth Amendment. The court upheld the law and dismissed the petition. The supreme court affirmed. 124 Neb. 464; 247 N.W. 39.

The challenged enactment declares that every loaf made for sale in Nebraska shall be one-half pound, one pound, one and one-half pounds or exact multiples of one pound and provides that the act shall not apply to fancy breads; directs the secretary of agriculture to prescribe reasonable tolerances or variations in excess of, but not under, the specified weights and the time for which said weights shall be maintained, and imposes fines for violations.

Rules and regulations promulgated by the deputy secretary of agriculture require the rate of tolerance not to exceed three ounces to the pound, the bread to be so made that under normal conditions it will maintain the minimum weight for not less than twelve hours after cooling, the weights to be determined by taking the average of not less than five loaves, if available. They do not purport to make bakers responsible for maintenance of minimum weights after delivery to a retail dealer or consumer or to a transportation agency for delivery.*

So far as need be specifically referred to, appellants' contentions are that: (1) A maximum tolerance is arbitrary and discriminatory. (2) The statute vests arbitrary power in the secretary of agriculture. (3) It is impossible

---

* June 24, 1931, the deputy secretary of agriculture prescribed a maximum tolerance of one ounce on half pound loaves, two ounces on pound loaves and ten per cent. on larger loaves, the tolerance to apply for a period of twelve hours after baking and the weights to be determined by taking the average of not less than five loaves, if available. After the commencement of this suit that regulation was superseded by the one here in question.

to comply with the prescribed tolerances, and the provisions as to time, place, possession and particular loaves subject bakers to fines irrespective of negligence.

The fixing of a maximum weight for each size or class of loaves is not unreasonable. In *Burns Baking Co.* v. *Bryan,* 264 U.S. 504, we were called on to consider the constitutionality of a similar measure. Nebraska Laws 1921, c. 2, p. 56. We there adverted to the undoubted power of the State to protect purchasers of bread from imposition by the sale of short-weight loaves (*Schmidinger* v. *Chicago,* 226 U.S. 578, 588) and showed that the purpose of prescribing minimum weights is to prevent sellers from palming off loaves of smaller size as those of a larger size. The tolerances prescribed by that statute were at the rate of two ounces to the pound of the minimum weight required to be maintained for 24 hours after baking. Here the rate of tolerance is three ounces to the pound, and minima are required to be maintained only 12 hours after cooling. In that case the evidence demonstrated that, owing to evaporation from bread under conditions of temperature and humidity that often prevail in Nebraska, it was impossible to make good bread in the regular way without exceeding the tolerances then prescribed. And it was held that a relatively much wider spread between the required minimum and the permitted maximum weight applicable to each size or class of loaves would be equally effective to prevent deception and that therefore the maxima complained of were unnecessary and arbitrary.

The diminution in weight of dough while being baked or of bread after baking cannot be definitely determined in advance. It may be usefully approximated. If only one size or class of loaves were being made, the fixing of minimum weight might be effective to prevent short-weight sales. But that is not the situation in Nebraska. The classes of loaves being made for sale and distributed

there include those being sold as one-half pound, a pound, a pound and a quarter, a pound and a half. The mere prescribing of a minimum weight for each class reasonably may be deemed not effective for there might be made such intermediate sizes as would permit deception and fraud. The danger is illustrated by the twenty ounce loaf being made by appellants. The statute prohibits it, undoubtedly for the reason that its weight is only four ounces more than the pound loaf and four ounces less than the pound and a half loaf. Unquestionably there are adequate grounds for prohibiting a loaf of that size. The fixing of both maximum and minimum weights for each class fairly may be deemed appropriate and necessary. If not too low, there is no support for the claim that the maximum is arbitrary or discriminatory.

There is no merit in the claim that the delegation of authority to the secretary violates the due process or equal protection clause. The act fixes the minimum weight of loaves of each size or class. The lessening of weight during and immediately following baking depends on changing conditions and varies considerably. Maxima that readily may be complied with in one period may be found too low at another time. The Nebraska legislature is not constantly in session and convenes regularly only once in two years. But the secretary may act at any time as need arises. Presumably the delegation was made in the interest of justice to the bakers as well as for the convenient enforcement of the statute and regulations. *Chicago & N. W. Ry. Co.* v. *Dey,* 35 Fed. 866, 875. Nor does the failure of the act to define " fancy breads " and the implied direction that the secretary shall ascertain what is covered by the phrase operate to vest arbitrary power in him. It is not shown that in the trade the phrase does not have an established meaning. On the contrary, the evidence tends to show that it has. The trial court found that it is " sufficiently definite " and that it does not cover

" common white bread." It does not appear that any requirement here involved applies to fancy bread made by appellants or other bakeries. *Castillo* v. *McConnico,* 168 U.S. 674, 680. *Williams* v. *Mississippi,* 170 U.S. 213, 225. *Yazoo & M. V. R. Co.* v. *Jackson Vinegar Co.,* 226 U.S. 217, 219–220. *Plymouth Coal Co.* v. *Pennsylvania,* 232 U.S. 531, 544–546. The delegation of authority appears to be well within the principles established by our decisions. *Louisville & N. R. Co.* v. *Garrett,* 231 U.S. 298, 305. *Red " C " Oil Co.* v. *North Carolina,* 222 U.S. 380, 394. And see *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U.S. 281, 287. *Union Bridge Co.* v. *United States,* 204 U.S. 364. *United States* v. *Grimaud,* 220 U.S. 506. *Buttfield* v. *Stranahan,* 192 U.S. 470, 496.

It is not shown that the prescribed tolerances are unreasonable or that the statute and regulations operate to prescribe punishment in the absence of fault. The lower court found, and the evidence warrants the finding, that appellants and other bakers readily may comply with the prescribed weights and tolerances. It is therefore to be presumed that in the absence of fault or negligence, violations will not occur. The facts plainly distinguish this case from *Burns Baking Co.* v. *Bryan.*

Moreover, the state supreme court held that a secondary purpose of the act is to prevent unfair competition by dishonest bakers resulting in injury to the consuming public. As there is no showing that the measure is not reasonably calculated effectively to serve for that purpose, the judgment upholding the act must be affirmed. And, in so far as it upholds the rules and regulations, it must be affirmed upon another ground. The lower court, following our decision in *Red " C " Oil Co.* v. *North Carolina, supra,* held that where one complains that regulations promulgated under legislative authority by a state board are unreasonable and oppressive, he should seek relief by applying to that board to modify them. There is no

suggestion that, if appellants had sought modification of the tolerances complained of, their application would not have been fairly considered or that they would have been denied relief to which they were entitled.

*Affirmed.*